**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Case No. 22-cr-339(2) (WMW/DJF) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Dylan Adrian Day, | |
| Defendant. | |

This matter is before the Court on Defendant Dylan Adrian Day's Motion to Suppress Evidence ("Motion") (ECF No. 88). Mr. Day seeks to suppress evidence obtained as a result of a June 30, 2023 search warrant authorizing a search of his apartment. He argues that the warrant application did not establish a nexus between the criminal activity the police were investigating and the apartment. (*Id.*) The Court held a hearing on the Motion on September 13, 2023 and issued an order permitting the parties to submit additional briefing (ECF No. 113). Mr. Day filed his additional briefing on October 11, 2023, in which he indicated that he could not find any helpful authority addressing whether his arrest violated the Fourth Amendment (ECF No. 125), but he did not withdraw the Motion. For the reasons given below, the Court finds that probable cause existed to support the search warrant and that the good faith exception to the warrant requirement would apply in any event.

**I.  Background**

Pine County Sheriff's Office Agent Andrew Abrahamson filed an application for a search warrant on June 30, 2022 seeking to search a Blue Chrysler 300 ("Chrysler"), an apartment on 4th Ave South in St. Cloud, Minnesota ("4th Ave. Apartment"), and Mr. Day's person. (Gov. Ex. 2.)

1

The warrant application explained that officers of the East Central Drug and Violent Offender Task Force had been conducting surveillance on Mr. Day with respect to drug and firearms trafficking for several years. (*Id.* at 2.) The warrant application is extensive and sets forth a litany of evidence establishing that Mr. Day was a likely drug trafficker. (*See Generally id.*) The Court summarizes below only that which is necessary to adjudicate Mr. Day's Motion.

Using GPS and cell phone location data, as well as physical surveillance of Mr. Day, officers determined that Mr. Day had been living at the 4th Ave Apartment for the six-month period prior to the warrant application. (*Id.* at 9.) They witnessed Mr. Day enter and exit the 4th Street Apartment "several different times at all times of the day." (*Id.*) In addition, Agent Abrahamson confirmed with apartment management that the 4th Ave. Apartment was leased to Mr. Day's wife. (*Id.*) Mr. Day's wife was on probation at that time, and she registered the 4th Ave. Apartment as her address with her probation officers. (*Id.*)

On April 6, 2022, Agent Abrahamson participated in surveilling Mr. Day. (*Id.* at 4–5.) In the late afternoon that day, officers witnessed Mr. Day drive the Chrysler to the area of 1700 3rd Avenue South in Minneapolis, Minnesota, where he parked just off the street in front of an apartment building. (*Id.* at 5.) He met with two individuals at that location, a male and female. (*Id.*) Officers observed him standing with these two individuals at the rear of the car with his trunk open. (*Id.*) The unknown male removed a backpack he was wearing and placed it in the trunk of the Chrysler as the female walked away. (*Id.*) When Mr. Day got back in the Chrysler, he handed the male a plastic baggie containing a white substance that appeared to be roughly two golf balls in size. (*Id.*) Based on Agent Abrahamson's training and experience, he believed that the substance in the plastic baggie was a controlled substance. (*Id.*)

In June 2022, Agent Abrahamson was in contact with a CI identified as CI-2 regarding narcotics purchases from Mr. Day. (*Id.* at 7.) CI-2 stated they had purchased a large quantity of fentanyl from Mr. Day during the previous nine months, both in the St. Cloud and Minneapolis areas. (*Id.*) On June 22, 2022, Agent Abrahamson was in contact with CI-2 regarding a controlled buy of narcotics from Mr. Day. (*Id.* at 7.) CI-2 met Commander Olds and Agent Abrahamson at a prearranged location in St. Cloud, where the officers searched CI-2's vehicle and person and confirmed the absence of any contraband. (*Id.* at 8.) CI-2 provided a prebuy statement and received prerecorded U.S. currency and an audio/listening device prior to the controlled buy. (*Id.*) GPS tracking data showed that Mr. Day left the 4th Ave. Apartment to drive the Chrysler directly to the meeting location. (*Id.*) Officers surveilling the property saw Mr. Day walk out of the 4th Ave. Apartment and get into the Chrysler and followed him to the meet location. (*Id.*) At the meet location, CI-2 got into the Chrysler to conduct the transaction. There is a paragraph gap in the warrant application between its description of what was purchased at the controlled buy and the controlled buy itself, which appears to have been accidental. However, the warrant states that after the transaction in the Chrysler, CI-2 produced a plastic bag containing hard white chunks of a substance that ultimately tested positive for fentanyl on TruNarc. (*Id.*)

On June 28, 2022, Agent Abrahamson was again in contact with CI-2 regarding a controlled buy to purchase fentanyl from Mr. Day. (*Id.*) CI-2 met Agent Abrahamson at a prearranged location, where Agent Abrahamson and another agent searched CI-2's person and vehicle, finding no contraband. (*Id.*) CI-2 provided a prebuy statement and received prerecorded U.S. currency and an audio/listening device prior to the controlled buy. (*Id.*) The officers followed the CI from this prearranged location to the meeting site in Minneapolis, and both GPS data and officer surveillance confirmed Mr. Day had traveled to the site from an address on Cedar Avenue

in Minneapolis. (*Id.*)  Mr. Day arrived at the site in the Chrysler, in which CI-2 conducted the transaction with Mr. Day.  (*Id.*)  Agent Abrahamson monitored the audio from the transaction via the audio recorder.  After the transaction was completed, CI-2 produced a plastic bag containing a substance consisting of white hard chunks.  (*Id.* at 8–9.)  The officers suspected the substance was fentanyl but did not field test it due to safety concerns.  (*Id.* at 9.)  A Stearns County District Judge issued the search warrant based on these and other allegations on June 30, 2022.  (*Id.* at 11.)

**II.     Analysis**

In ruling on a motion to suppress evidence obtained from the execution of a search warrant, the Court determines probable cause "based on the information before the issuing judicial officer." *United States v. Smith*, 581 F.3d 692, 694 (8th Cir.2009) (internal quotation marks and citation omitted). "Probable cause exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place[.]" *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009).  To satisfy this requirement, "there must be evidence of a nexus between the contraband and the place to be searched[.]" *United States v. Tellez*, 217 F.3d 547, 549–50 (8th Cir. 2000).  "Factors to consider in determining whether a nexus exists include the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (internal quotations and citations omitted).

The warrant application details Mr. Day leaving the 4th Ave. Apartment in June 2022 to go directly to the controlled buy site, where CI-2 obtained a plastic bag containing a hard white substance that field tested positive as fentanyl. (Gov. Ex. 2 at 8.)  Though there is a gap in the warrant between the paragraph describing the controlled purchase and the description of the substance CI-2 ultimately purchased and produced to law enforcement, it is obvious from the face

4

of the warrant that the substance, which tested positive as fentanyl, was the substance CI-2 purchased in the June 22, 2022 controlled buy. (*See id.*) The allegation that Mr. Day left the 4th Ave Apartment and drove directly to the controlled buy meeting site establishes a nexus to the apartment. Moreover, officers reasonably believed Mr. Day lived at the 4th Ave Apartment based on months of surveillance and their investigation confirming the apartment was leased to Mr. Day's wife. (*Id.* at 9.) The June 22, 2022 controlled purchase thus established a nexus between Mr. Day's alleged drug dealing and the 4th Ave. Apartment. *See, e.g.*, *United States v. Cass*, 8:22-CR-138, 2022 WL 16848183, at *3 (D. Neb. Sept. 30, 2022) (finding sufficient nexus for probable cause to search a residence when officers saw trafficker stop there before controlled buy and proceed immediately from there to controlled buy site), *report and recommendation adopted*, 2022 WL 14773020 (D. Neb. Oct. 26, 2022). The Court finds probable cause to support the warrant and recommends Mr. Day's Motion be denied for these reasons

The Court also recommends Mr. Day's Motion be denied based on the "good faith" exception recognized in *United States v. Leon*, 468 U.S. 897 (1984). Under *Leon*, the Court need not suppress evidence "if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012) (internal quotations and citations omitted). Here, the Court finds it was objectively reasonable for both the issuing judge and the law enforcement officers involved in the search to "logically infer that a drug dealer would store contraband at his residence." *United States v. Norey*, 31 F.4th 631, 637 (8th Cir. 2022) (quoting *United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021)), *reh'g denied*, 2022 WL 13748851 (8th Cir. Oct. 24, 2022). The *Leon* exception thus supplies an additional ground on which to deny Mr. Day's Motion.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mr. Day's Motion to Suppress Evidence (ECF No. [88]) be **DENIED**.

Dated:  November 6, 2023              *s/ Dulce J. Foster*
                                      Dulce J. Foster
                                      United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).